[No. 3086.]

## J. F. COLLINS v. THE STATE.

1. PRACTICE—JUDGMENT—AMENDMENT.—A trial court has the authority to amend a judgment after the expiration of the term at which it was rendered, in order to correct clerical errors or mistakes, or to add an omitted clause necessary to give it effect, when there is anything in the judgment by which to amend. Under this rule, as laid down in this State and supported by elementary authority, the trial court, in a proceeding on a forfeited appeal bond, was authorized to amend the judgment *nisi* by inserting the omitted words, "the judgment will be made final unless good cause be shown at the next term of the court why the defendant did not appear." See the opinion *in extenso* on the subject.

2. SAME—NOTICE.—Articles 1354 and 1355 of the Revised Statutes require that notice be given to the parties interested in a judgment or decree before any correction of mistakes or misrecitals in the judgment can be made by amendment. Judgment *nisi* is the foundation of *scire facias* proceedings on a forfeited bail bond. To that judgment the principal in the bail bond is a direct party in interest, and, by reason thereof, becomes a necessary party to a proceeding to amend the judgment *nisi*, even though he was not made a party in the *scire facias*

3. BAIL BOND—PRACTICE—VARIANCE.—Under the Revised Code. the generic term "horse" embraces all animals of the horse kind. The indictment charged the offense of stealing "one horse." The bond described the offense as the theft of "one sorrel mare." *Held*, that the descriptions were not variant.

4. SAME—ALTERATION.—In the original bond, sent up for inspection, the name of a surety had been erased by ink lines drawn across it, so as to obliterate it. It was objected, to the competency of the bond as evidence, that it first devolved upon the State to satisfactorily explain the erasure, and show that it was made under circumstances that did not affect the rights of the obligors. *Held*, that the objection was well taken.

APPEAL from the District Court of Callahan. Tried below before the Hon. T. B. Wheeler.

The opinion states the case. The amount of the bond adjudged was five hundred dollars.

*C. I. Evans,* for the appellant: 1. The court has no power, at a subsequent term, to correct a judicial error in a judgment rendered at a former term, and more especially after the lapse of three years after the rendition of the judgment. The original judgment *nisi* was rendered May, 1880, and did not state that it "would be made final, unless good cause be shown at the next term of the court why defendant did not appear." November 30, 1882, the district attorney filed a motion to amend by inserting these words, to which motion the court sustained appellant's exceptions and permitted the district attorney to amend his motion; and an amended motion containing these allegations was thereupon filed, seeking to correct the judgment *nisi* on the ground that the omission of these necessary words prescribed by the statute was a "clerical oversight on the part of the clerk of the court, for by law the entry of the judgment *nisi* forfeiting a bail bond is required to state the substance of the omitted sentence."

To this amended motion the appellant filed several exceptions, the first of which is on the ground that this amended motion is in the nature of a writ of error *coram nobis* for the correction of matters of fact in the judgment, while it appears from the face of the motion that the correction or amendment sought to be made is a matter of law; and this court has no jurisdiction to correct, at a subsequent term, the judicial errors of a former term.

This exception was overruled by the court and appellant excepted; and the first assignment of error brings in review this action of the court below. (Rev. Civ. Stat., Arts. 1354, 1355; *Perkins* v. *Dunlavy*, 3 Texas Law Rev., 177; *Lorance* v. *Marchbanks*, 2 Texas Law Rev. 44; *Camoran* v. *Thurmond*, 56 Texas, 22; *Russell* v. *Miller*, 40 Texas, 494; *Miller* v. *Richardson*, 38 Texas, 502; Freeman on Judgments, secs., 38–73.)

2. Every person interested in, or to be affected by a judgment, should have notice of a motion to amend it, filed either during or after the expiration of the term at which it was rendered. The provision of the statute, Code of Criminal Procedure, Article 442, relating to service of the *scire facias*, and providing that it need not be served on the defendant, cannot be extended by construction so as to include a motion to amend the judgment, or any other process than that mentioned.

The appellant accepted service of the motion to amend the judgment; E. Jackson, the other surety, was served; but there was no service on the principal in the bail bond, W. C. Tinker, and he had no notice of the motion. (Rev. Civ. Stats., 1354, 1335; *Williams* v. *Nolan*, 58 Texas, 708; *Coffee* v. *Black*, 50 Texas, 117; *Blalack* v. *The State*, 3 Texas Ct. App., 376; Freeman on Judgments, sec. 72.)

3. While it is true that a court has authority to amend a judgment after the expiration of the term at which it was rendered, in order to correct clerical mistakes or errors, or to add an omitted clause necessary to give it effect, when there is anything in the judgment by which to amend, yet it has no revisory or appellate powers over such judgments, and cannot, under the guise of an amendment, modify or enlarge a previous judgment so as to make it express something which the court did not pronounce, though it should clearly appear that it ought to have so decided. It is clerical, and not judicial errors, that may be corrected, and, to authorize such correction, it must be clearly shown that the court intended to, and did, pronounce a different judgment from the one entered up.

The State first introduced the bail bond; second, the indictment against Tinker, the principal in the bail bond; third, the judgment *nisi* entered May 7, 1880, Hon. T. L. Hutchison, judge, presiding; and, fourth and last, the docket entries from the judge's criminal docket of the court at the May term, 1880, as follows: "Bail bond forfeited; judgment *nisi* for the sum of $500 against W. C. Tinker, as principal, and J. F. Collins and

E. Jackson, as sureties, and *scire facias* to sureties." This was all the evidence offered by the State to sustain the motion, and it was insufficient. No attempt whatever was made to prove that the proposed amendment was intended to have been inserted in the judgment and was omitted by mistake. (*Lorance v. Marchbanks*, 2 Texas Law Rev., 44; *Camoran* v. *Thurmond*, 56 Texas, 22; *Ximines* v. *Ximines*, 43 Texas, 458; *Miller* v. *Richardson*, 38 Texas, 502; Freeman on Judgments, sec. 70.)

4. It is not sufficient that a bail bond names some offense known to the laws of the State, but the offense named must be the very one with which the principal obligor stands charged. If it names a different one, the sureties may avail themselves of the variance. The indictment charges Tinker with "theft of one certain horse." The bail bond recites that he stands charged with the "theft of one sorrel mare." (*Smalley* v. *The State*, 3 Texas Ct. App., 202, and authorities there cited; *Brisco* v. *The State*, 4 Texas Ct. App., 222; Code Crim. Proc., Art. 288.)

5. The district court erred in overruling appellant's objection to the introduction of the bail bond in evidence, because it appeared from the face of said bail bond that a material alteration and erasure had been made therein, in this, that it appeared that the name of S. Young had been written or signed to said bond as one of the sureties thereto, and that said name had been erased by drawing ink lines across it, so as to obliterate said name; and because it was incumbent on the State to explain said alteration before said bail bond could be admitted in evidence, which was not done. If, on the production of a written instrument, it appears upon its face to have been materially altered, it is incumbent on the party offering it in evidence to explain and account for its appearance.

The original bail bond is sent up in the transcript by order of the court below, so that this court may inspect it. An inspection of it will show that there is such a material alteration on its face, the erasure of the name of one of the sureties, which required the appellee to explain its appearance, before it would be admitted in evidence. This point was reserved in bill of exceptions. (*Kiser et al.* v. *The State*, 13 Texas Ct. App., 201; *Heath* v. *The State*, 14 Texas Ct. App., 213; *Davis* v. *The State*, 5 Texas Ct. App., 48; *Park* v. *Glover*, 23 Texas, 471.)

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   On a former appeal the judgment-final in this case was reversed because the judgment *nisi* upon which it was based was invalid, in that it did not conform to the express requirements of the four hundred and forty-first Article of the Code of Criminal Procedure, regulating the requisites of such judgments.   (*Collins* v. *The State*, 12 Texas Ct. App., 356.)

After the case was remanded from this to the district court for a new trial, the district attorney caused new citations to issue to the two sureties, service of which was had upon one, and service of the other was accepted by this appellant.   Subsequently the district attorney filed a motion to amend the original judgment *nisi* by inserting the words prescribed in Article 441 Code of Criminal Procedure, which this court had held absolutely necessary to the validity of the judgment.   Appellant accepted service of this motion, but no service of said motion was ever had upon the principal in the recognizance (Tinker).

To this motion appellant submitted the following exceptions, viz:   "First, said motion is in the nature of a writ of error *coram nobis* for the correction of matters of fact in the judgment, while it appears from the face of said motion that the correction or amendment sought to be made is a matter of law, and this court has no jurisdiction to correct at a subsequent term the judicial errors of a former term, but the proper remedy for such a correction is in a revisory or appellate tribunal.   Second, because said motion had not been served on W. C. Tinker, the principal obligor in the bail bond, and he had no notice of it; and, third, because the Court of Appeals, in the case of *Collins* v. *The State* (12 Texas Ct. App., 356), have decided that this very judgment *nisi* which the motion seeks to amend is invalid, null and void, and therefore there is now no such valid and legal judgment *nisi* in this case as this court can amend or correct."

These exceptions were overruled, and, after a hearing of the evidence on the motion, the same was sustained and granted, and the judgment *nisi* amended so as to conform to the requirements of the law.

In the errors complained of in this ruling, two questions arise: first, could the judgment *nisi* be amended as was done? and, second, if so, could such amendment be made without notice to Tinker, the principal obligor in the bail bond?   As we understand the rule, it is that a court "has the authority to amend a judgment after the expiration of the term at which it was rendered, *in order to correct clerical mistakes or errors, or to add an*

*omitted clause necessary to give it effect, when there is anything in the judgment by which to amend."* (*Lorance* v. *Marchbanks*, decided by the Supreme Court June 12, 1883, 2 vol. Texas Law Rev., p. 44, citing *Chambers* v. *Hodges*, 3 Texas, 517; *Trammell* v. *Trammell*, 25 Texas Supp., 261.)

"The rule," says Mr. Freeman, "that the record admits of no alteration after the term is obsolete. * * * All courts have the inherent power to correct clerical errors at any time, and to make the judgment entry correspond with the judgment rendered. This power exists in criminal prosecutions as well as in civil cases." (Freeman on Judgments, 3 ed., sec. 71.) Again, the same author says: "Where there is nothing to show that the judgment entered is not the judgment ordered by the court, it cannot be amended. On the one hand, it is certain that the proceedings for the amendment of judgments ought never to be permitted to become revisory or appellate in their nature, ought never to be the means of modifying or enlarging the judgment or the judgment record, so that it shall express something which the court did not pronounce, even although the proposed amendment embraces matter which ought clearly to have been so pronounced. On the other hand, there are many cases in which it so clearly appears that the judgment as entered is not the sentence which the law ought to have pronounced upon the facts as established by the record, that the court acts upon the presumption that the error is a clerical misprision rather than a judicial blunder, and sets the judgment, or, rather, the judgment entry, right by an amendment *nunc pro tunc*." (Freeman on Judg., sec. 70.)

In the case under consideration, the object of the proceedings had was to forfeit the bail bond. How this is to be done is regulated by statute. All the proceedings appear to have been regular and in conformity with the statute, up to the clerical act of entering of the judgment *nisi;* and even that entry is correct, except that it omitted to recite that "the judgment" already rendered "will be made final unless good cause be shown at the next term of the court why the defendant did not appear." Without this recital, the judgment was imperfect and invalid in law. To amend the judgment by adding these words would not be revising the judgment; neither would it be enlarging the judgment so as to express something which the court did not pronounce. The amendment was clearly one which was necessary to give the judgment effect, and was simply to supply the omis-

sion of a clause necessary to give it effect, and the judgment itself was sufficient, save this omitted clause; and this fact is manifest from an inspection of the judgment itself. The judgment, on its face, showed the omission, and, from an inspection of the judgment alone, the character of and the necessity for the amendment is apparent. The entry as made does not conform to what the court evidently intended it should be when it was ordered, and was therefore merely a *clerical error*, and amendable. (Freeman on Judg., sec. 72.) Under the rules above cited, we are of opinion the amendment was permissible and legally made.

Was Tinker, the principal obligor, entitled to notice of the proposed amendment before it could be acted upon by the court? It is a well established rule that " whenever an amendment of a judgment or decree is sought, notice should be given to the adverse party of the motion to amend.    *    *    *    An exception to this rule may be allowed where the amendment is made from the record alone, and the judgment as proposed to be annulled is not different from what it would have been construed to be independent of the amendment. No one's rights are affected by it, as the effect of the record is not changed. All who may have consulted the record or acted upon the faith of it must be presumed to have notice of all which the proper construction of the whole record discloses; in other words, of the effect of the record." (Freeman on Judg., sec. 72a.)

Our statute requires that notice be given to the parties interested in a judgment or decree before any correction of mistakes or misrecitals in the judgment can be made by amendment. (Rev. Stats., Arts., 1354, 1355; *Williams* v. *Nolan*, 58 Texas, 708.) That is, all the parties interested in the proceedings resulting in the judgment, and who would be affected by the amendment, must have notice of the proposed amendment. (*Russell* v. *Miller*, 40 Texas, 494; *Blalack* v. *The State*, 13 Texas Ct. App., 376.)

Was the principal obligor interested and concerned in, and likely to be affected by, the amendment? As rendered, the judgment *nisi* was invalid because not in conformity to law. It was not a good or sufficient judgment, nor such an one as would uphold and sustain a judgment final on *scire facias* to the sureties. True, the principal is no party to the *scire facias* proceedings, because the sureties alone are cited and required to show cause, if any, " at the next term, why the defendant did not appear," and also, why the judgment *nisi* should not be

made final. (Code Crim. Proc., Arts. 441, 442.) In these subsequent proceedings he has no direct interest, perhaps. But these whole proceedings are based upon the judgment *nisi,* which is a judgment in which he is a party directly at interest, because it is a declaration of forfeiture of his bond, and of the right of the State to claim the penalty of said bond as against him. As to him as well as the sureties, this declaration of forfeiture must be legal and valid in all respects, or the State cannot enforce it against him or them. The judgment must be good in law. If not good and sufficient in law, then any amendment or proposed amendment seeking to correct it and thereby make it valid, must necessarily affect him by making valid a judgment which theretofore was invalid against him. As to such a proposed amendment he is an interested and necessary party, and should have notice of it. This exception was well taken to the motion to amend, and it should have been sustained. These objections, however, might perhaps have been obviated by a new forfeiture instead of a motion to amend.

Two objections were urged to the bail bond when it was offered in evidence: 1. That there was a fatal variance between the offense charged in the indictment and that named in the bond, the former charging theft of " one certain horse," and the latter naming the offense as theft of " one sorrel mare." This objection would have been good under the law as it was before the adoption of the Revised Statutes, but under these statutes (Penal Code, Art. 746), the generic term " horse " embraces all animals of the horse species, and there was no variance in the descriptions in the indictment and bond.

2. Alteration in the bond. From the original bond, which is sent up as part of the record for our inspection, it appears that the name of " S. Young " had been written or signed as one of the sureties thereto, and that said name had been erased by ink lines drawn across so as to obliterate it. The objection was that the alteration was patent and material, and that it devolved upon the State to satisfactorily explain the erasure, and show that it was made under circumstances that did not affect the rights of the obligors, before said bond was admissible as evidence. This objection was well taken, and the court erred in overruling it. (*Kiser et al.* v. *The State,* 13 Texas Ct. App., 201; *Heath* v. *The State,* 14 Texas Ct. App., 213; *Davis* v. *The State,* 5 Texas Ct. App., 48.)

Several other errors are assigned, but we have pointed out

those we deemed tenable; and because of the errors so pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 21, 1884.