Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-11-00077-CR

Ricardo A. **ZAVALA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 295771
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:  December 7, 2011

AFFIRMED

Appellant Ricardo A. Zavala Jr. appeals his conviction for assault causing bodily injury. Zavala raises two issues on appeal: (1) the trial court erroneously admitted expert witness testimony that improperly bolstered the testimony of the assault victim; and (2) the trial court's admission of hearsay and improper extraneous offense evidence violated Zavala's Sixth Amendment right of confrontation.  We affirm the trial court's judgment.

**BACKGROUND**

While driving home from a baby shower, Zavala got into an argument with his then-girlfriend and later-wife, Kathryn Palomino. Zavala ordered Palomino out of the truck. She refused. Palomino testified that Zavala pulled her out of the vehicle, threw her against the truck, and choked her until she lost consciousness. After regaining consciousness in a pool of her own blood, Palomino called her sister, a nurse, for medical advice. Her sister advised her to go to a hospital. Palomino called a friend who drove her to the hospital. She told neither her sister nor her friend how she was injured. During the medical exam, Palomino explained that she was unsure how she was injured and that she might have fallen. Believing Palomino's head injury to be more consistent with an assault, the hospital staff called police. Palomino testified that she told the responding officer that she was unsure if she fell or if she was punched.

Zavala was arrested over a year later. Within a week after posting bond, Zavala drove Palomino to his attorney's office where Palomino signed an affidavit of non-prosecution. On direct examination, Palomino testified that the statement she signed in the affidavit was false and was wholly written and typed by either Zavala's attorney or his legal secretary. Palomino stated that she signed the affidavit because she loved Zavala and did not want him to get in trouble. On cross-examination, she was accused of, *inter alia*, (1) making the story up because she was jealous that Zavala cheated on her, (2) being drunk at the time she was injured, and (3) committing perjury. Zavala's counsel also had Palomino read the affidavit of non-prosecution into the record.

Zavala testified at trial that on the night of the incident, Palomino was drunk and had swung at him when he took her home. He explained that he pushed her against the truck after she attempted to hit him, and as he let go, she fell face-first on the driveway. After the defense

rested and over Zavala's objection, the State called two rebuttal witnesses. The first was Maria Falcon, a licensed counselor. Her expert testimony explained why some women choose not to report acts of domestic violence. The State then called Sergeant Terry Mason to rebut Zavala's claim that he never assaulted Palomino or his ex-wife.

### BOLSTERING THROUGH EXPERT WITNESS TESTIMONY

In his first point of error, Zavala contends the trial court erred in admitting the testimony of Maria Falcon, a licensed counselor who worked with victims of family violence. Over objections, Falcon testified that it is common for a victim who has been assaulted by a husband or boyfriend to change her story and to not tell friends or family about the abuse. Falcon did not give an opinion as to Palomino's truthfulness. Zavala argues that because Palomino never recanted allegations of abuse and because she was never impeached, Falcon's testimony was inadmissible bolstering. Zavala does not argue on appeal that Falcon was unqualified or that her expert testimony was insufficiently reliable under Texas Rule of Evidence 702.

## A. Standard of Review

A trial court's ruling on the admissibility of expert testimony is reviewed under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997).

## B. Applicable Law

Improper "bolstering" occurs when a party offers "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) (alteration in

original) (quoting former TEX. R. CRIM. EVID. 401). "[T]he State may not bolster or support its own witnesses unless they have been impeached on cross-examination." *Farris v. State*, 643 S.W.2d 694, 697 (Tex. Crim. App. 1982) (citing *Pless v. State*, 576 S.W.2d 83 (Tex. Crim. App. 1978)). The fact that expert testimony may tend to bolster or support a particular witness's credibility is not the proper test for determining admissibility; rather, the proper test "is whether the expert's testimony, if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue, and whether it is otherwise admissible under general rules of relevant admissibility." *Duckett v. State*, 797 S.W.2d 906, 914, 917 (Tex. Crim. App. 1990) (citing TEX. R. EVID. 702), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993) (disapproving *Duckett* to the extent *Duckett* may be read as requiring impeachment prior to the admission of *substantive* evidence offered by an expert witness).

Expert testimony may aid the jury's decision, but the testimony may not replace that decision. *Duckett*, 797 S.W.2d at 914, 920. Expert testimony is inadmissible under Rule 702 when the expert offers a direct opinion on a witness's credibility. *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993).

## C. Analysis

The record supports the conclusion that Palomino was impeached. During closing arguments, defense counsel stated, "I don't take fondness of calling [Palomino] a liar, a cheater, a thief, but that's what she is." This statement sums up Zavala's defensive theories presented throughout the trial. Zavala relied on the affidavit of non-prosecution as an accurate account of the incident. Counsel for Zavala highlighted Palomino's inconsistent testimony by having her read her affidavit of non-prosecution into the record. Palomino also admitted (1) that she told her friend she did not know how she was injured, and (2) that she lied to the doctor when she

said she did not know how she sustained the injuries. Zavala's counsel engaged in a vigorous cross-examination that cannot be characterized as mild. *See Duckett*, 797 S.W.2d at 919 (determining a witness was effectively impeached when much of the impeachment evidence focused on inconsistent statements made by the witness); *cf. Farris v. State*, 643 S.W.2d 694, 696–97 (Tex. Crim. App. 1982). Zavala relies on *Farris*, where the court held the admission of expert testimony was harmful when the complainants were not first impeached. *Farris*, 643 S.W.2d at 697. The court noted that the cross-examination of the complainants was "far from being vigorous in nature [and] was extremely mild." *Id.* at 696. The court also noted that any attempted impeachment was related to matters that were not material and were totally unrelated to the bolstering testimony of the expert witness. *Id.* at 697. In this case, the cross-examination was vigorous and impeached Palomino with multiple inconsistent statements. As a result, the trial court did not err in admitting Falcon's testimony over Zavala's objections of improper bolstering.

Relying on our holding in *Scugoza*, Zavala also argues that before expert testimony is admitted, a complainant must recant an *affirmative* allegation of abuse, and, conversely, expert testimony is not admissible when a complainant recants a prior affidavit of non-prosecution. *See Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.). We do not agree with this narrow interpretation. In *Scugoza*, an assault victim initially reported to police that her husband had assaulted her; however, at the husband's trial, the wife recanted her original accusation. *Id.* at 361. We did not limit the admissibility of expert testimony on spousal abuse to situations where abuse victims recanted affirmative allegations of abuse. Rather, we noted that an expert's testimony regarding patterns of spousal abuse is admissible if it is "useful to the

jury in discerning [the complainant's] credibility as it helped to explain inconsistencies between [her] trial testimony and her previous report to [an o]fficer." *Id.* at 363.

Falcon explained to the jury the reasons why women who have been assaulted by their husbands or boyfriends change their stories and why they do not report instances of abuse. Falcon explained technical terms, and she explained that physical, emotional, and psychological difficulties contribute to a victim's refusal to report abuse and to a victim's tendencies to change her story. This testimony helped explain why Palomino refused to report the abuse to her friends, her family, hospital personnel, and the responding officer, and it also helped explain why Palomino recanted her affidavit of non-prosecution. *See id.* Falcon's testimony did not address the specific abusive injuries to Palomino, nor did Falcon directly express an opinion regarding the truthfulness of Palomino's testimony. *See Cohn v. State*, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993); *Scugoza*, 949 S.W.2d at 363. Therefore, the trial court did not abuse its discretion in admitting Falcon's testimony. *See Scugoza*, 949 S.W.2d at 363. Zavala's first point of error is overruled.

### RIGHT OF CONFRONTATION AND EXTRANEOUS OFFENSE EVIDENCE

In his second point of error, Zavala contends that his Sixth Amendment right to confrontation was violated when Sergeant Mason offered evidence regarding an alleged assault of Zavala's ex-wife. Zavala also argues that the trial court abused its discretion in admitting extraneous evidence of cohabitation and adultery.

### A. Standard of Review

A trial court's ruling to exclude or admit evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). A reviewing court will uphold the trial court's ruling

so long as it was within the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391. However, we review de novo whether a testimonial statement of a non-testifying declarant was erroneously admitted into evidence. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

### B.  Sixth Amendment Right of Confrontation

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.  "[T]he admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and the defendant lacked a prior opportunity for cross-examination."  *Wall*, 184 S.W.3d at 734 (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

### C.  Analysis

Sergeant Mason was called as a witness to rebut "the false impression" Zavala left with jurors when Zavala stated he never assaulted Palomino or his ex-wife and that he never committed adultery while married to Palomino.  Mason was supervising a collaborative investigation by the military that was inquiring into the alleged assault of Palomino and Zavala's possible extramarital affairs and cohabitation with a junior officer.  Mason served in the same Army company as Zavala but had no personal knowledge of any acts of violence by Zavala.

#### 1.  Evidence of Adultery

During trial, Mason testified that the investigation revealed Zavala had an extramarital affair and was "cohabiting" with someone else while he was still married.  Zavala argues that Mason's reference to cohabitation and adultery was not probative and was greatly prejudicial. We need not address this issue because Zavala failed to preserve his claim of error.  While Zavala objected to the first question of adultery and cohabitation, he failed to object when the

same question was asked again five questions later. *See Ethington v. State*, 819 S.W.2d 854, 859–60 (Tex. Crim. App. 1991).

### 2. *Evidence of an Extraneous Assault*

The gist of Zavala's Sixth Amendment argument is that Sergeant Mason offered inadmissible extraneous hearsay evidence regarding the assault of his ex-wife. He contends that evidence of a possible assault on his ex-wife was testimonial in nature, and that he was deprived of the opportunity to cross-examine his ex-wife.

During direct examination, Zavala voluntarily stated that he had never assaulted his wife (Palomino), or his ex-wife. In response to his attorney's question about his arrest for assaulting Palomino, Zavala stated that he initially thought the criminal charges were brought by his ex-wife. During rebuttal, the State asked Mason, "If [Zavala] told this jury that he did not assault his wife *or* his ex-wife, would that be—would you agree with that or disagree?" Mason answered, "I would disagree." The court sustained Zavala's speculation objection.

Unlike in *Crawford* and *Wall*, Mason never testified as to any testimonial statements made by Zavala's ex-wife. In fact, Mason never mentioned Zavala's ex-wife. Mason merely answered a vague, ambiguous question. Mason's subsequent testimony revealed that his answers to the rebuttal questions were based solely on the military's investigation of the alleged assault on Palomino, the alleged extramarital affairs, and cohabitation by Zavala. Mason's testimony cannot be construed as offering Zavala's ex-wife's testimonial declaration. *See Coble v. State*, 330 S.W.3d 253, 289–90 (Tex. Crim. App. 2010) (holding that there was no violation of the right of confrontation where there is no out-of-court statement).

Zavala also argues on appeal that admission of the same evidence regarding his ex-wife was unfairly prejudicial and greatly outweighed the probative value of Mason's third-party-

hearsay testimony. *See* TEX. R. EVID. 403. Again, Mason's testimony cannot be construed as offering testimony regarding Zavala's ex-wife; therefore, we need not analyze Mason's testimony about an extraneous offense against his ex-wife under Rule 403.

Because the trial court never admitted a hearsay statement made by Zavala's ex-wife, the rebuttal witness's testimony did not violate Zavala's Sixth Amendment right of confrontation. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004); *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006). Therefore, Zavala's second point of error is overruled.

## CONCLUSION

Reviewing the record under the appropriate standards of review, we hold that the trial court did not abuse its discretion in admitting the expert testimony of Maria Falcon. Additionally, we hold the admission of Sergeant Mason's testimony related to the investigation did not violate Zavala's Sixth Amendment right of confrontation. Therefore, we affirm the trial court's judgment.

Rebecca Simmons, Justice

DO NOT PUBLISH